UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL A. CRISCIONE )<br>    Plaintiff )<br> )<br>v. )<br> )<br>ATLANTIC MOTORS LLC and )<br>CREDIT ACCEPTANCE CORPORATION )<br>    Defendant )<br>_____ ) | CIVIL ACTION NO.<br><br><br><br><br><br><br><br>OCTOBER 3, 2016 |

## COMPLAINT

### I. INTRODUCTION

This is a suit brought by a consumer regarding the purchase and sale of a motor vehicle pursuant to a retail installment sales contract. Plaintiff brings this action to recover actual damages, statutory damages, punitive damages and reasonable attorney's fees and costs from Defendant Atlantic Motors LLC ("Atlantic Motors"). The Plaintiff claims that Atlantic Motors violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* ("TILA"), Conn. Gen. Stat. § 52-565 for civil forgery, the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-770 *et seq.* ("RISFA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), in the sale of the vehicle to Plaintiff.

### II. PARTIES

1.      Plaintiff, Michael A. Criscione ("Criscione" or "Plaintiff"), is a natural person residing in Woodbury, Connecticut.

2.      Defendant Atlantic Motors is a Connecticut limited liability company that operates a used car dealership in Waterbury, Connecticut.

3. Defendant Credit Acceptance Corporation ("CAC") is a Michigan corporation with a principal place of business in that state, and it is a finance company that accepts assignment of retail installment sales contracts.

## III. JURISDICTION

4. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5. This court has jurisdiction over Atlantic Motors because it is organized under the laws of the state of Connecticut and it regularly conducts business in this state.

6. This court has jurisdiction over CAC because it regularly conducts business in this state.

7. Venue in this court is proper because the Plaintiff resides in Connecticut and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

8. Prior to March 31, 2016, Plaintiff saw a 2006 Ford F-250 pick-up truck (the "Vehicle") for sale on Atlantic Motors' website for an advertised price of $18,999.

9. Plaintiff was interested in the Vehicle, and he visited Atlantic Motors to see and test drive the Vehicle.

10. Plaintiff met with an Atlantic Motors' salesman who identified himself as Bob, and Plaintiff showed Bob the advertisement of the vehicle on his mobile device.

11. Plaintiff returned to Atlantic Motors the next day with his father, and he negotiated the sale price of the vehicle for $18,000 and a trade-in allowance of $4,000 for his 2001 Chevrolet 2500 HD.

12. Bob told Plaintiff that his monthly payment would be between $430 and $450.

13. Plaintiff agreed to purchase the Vehicle for $18,000, and Atlantic Motors agreed to give him $4,000 allowance for his trade-in vehicle.

14. Bob later told Plaintiff he was approved for financing and instructed him to come to Atlantic Motors after 5:15 pm that day with $400 cash, which he claimed was for registration fees, and the title for the trade-in vehicle.

15. Plaintiff returned to Atlantic Motors after 5:15 p.m. as instructed and he gave Bob the title for the trade-in vehicle and $400.

16. Plaintiff requested a receipt for the $400 cash payment, and Bob said he would give him a receipt the next day.

17. Bob provided Plaintiff with a document that he called a "bill of sale" for the Vehicle and instructed Plaintiff to sign the form.

18. Unbeknownst to Plaintiff, the form that he signed was a Supplemental Assignment of Ownership Q-1 form and at the time Plaintiff signed the Q-1 form, the selling price of the vehicle was not written on the form.

19. Atlantic Motors did not provide Plaintiff with a purchase order for the purchase as required by Conn. Gen. Stat. § 14-62(a).

20. Atlantic prepared a retail installment sales contract that listed Plaintiff as the seller.

21. The Contract did not include the trade-in allowance of $4,000, but instead listed a cash down payment of $3,000, even though Plaintiff had not made any cash down payment other than the $400 paid to Bob.

22. The Contract listed a cash sale price of $20,350, an amount that was approximately $2,350 more than the agreed upon price.

23. The Contract also provided for interest at an annual percentage rate of 18.99%.

24. Atlantic Motors never provided the Contract to Plaintiff, who never saw it.

25. Atlantic Motors affixed Plaintiff's electronic signature and initials onto the Contract without Plaintiff's knowledge or consent, and it assigned the Contract to CAC without disclosure that the Plaintiff had not executed the Contract.

26. Plaintiff believes, and therefore alleges, that Atlantic Motors added to the cash price of the Vehicle a discount fee that was assessed by the finance company, Credit Acceptance Corporation, to whom it assigned the Contract.

27. The additional discount fee would not have been charged in a cash transaction.

28. Atlantic Motors failed and neglected to give Plaintiff a copy of the Retail Installment Contract and did not provide him with any of the disclosures required under 28 U.S.C. § 1638.

29. After he took delivery of the Vehicle, Plaintiff received an email from the assignee of the Contract, CAC, advising him that a payment of $602 had been deducted from his account.

30. Plaintiff called CAC to inquire as to why it had taken the payment out of his bank account, and he learned that his monthly payments were much higher than Atlantic Motors told him they would be.

31. Plaintiff informed CAC that he had not been given a copy of the Contract and requested that CAC send him a copy.

32. In or around late May, 2016, Plaintiff received a copy of the Contract from CAC, and he learned that he was charged more for the Vehicle than he had agreed to pay and that it did not list his trade-in allowance, and it did not accurately reflect the amount of the cash down payment that he had made.

33. Plaintiff informed CAC of the foregoing, and CAC is currently the holder of the Contract.

## V. CAUSES OF ACTION

### A. TRUTH IN LENDING ACT

34. Paragraphs 1-33 are incorporated.

35. Atlantic Motors violated TILA, because it failed to provide Plaintiff with any of the disclosures required by 15 U.S.C. § 1638.

36. Additionally, Atlantic Motors further violated TILA because the truth in lending disclosures on the Contract are not accurate.

37. Specifically, the increase to the cash price due to the discount charge should have been disclosed as part of the finance charge but was instead included as part of the amount financed.

38. Additionally, there were additional sales taxes of $228.60 charged due to the failure to list the trade-in and the inclusion of the false cash down payment, and

these charges would not have been assessed in a cash transaction and were charged as an incident to the extension of financing, and they therefore should have been disclosed as part of the finance charge but were instead included as part of the amount financed.

39. Atlantic Motors violated TILA by improperly listing his trade-in as a cash down payment, and only crediting $3,000 for the down payment even though it agreed to give Plaintiff a trade-in allowance of $4,000.

40. For Atlantic Motors' TILA violations, it is liable to Plaintiff for actual damages, plus additional damages of $2,000, and attorney's fees and costs.

## C. CIVIL FORGERY

41. Paragraphs 1-33 are incorporated.

42. Atlantic Motors assigned the Contract to CAC with Plaintiff's unauthorized electronic signature.

43. Atlantic Motors has falsely made, altered, forged, or counterfeited the document and knowingly presented it as genuine to CAC , and it is liable to Plaintiff for double his damages pursuant to Conn. Gen. Stat. § 52-565.

## B. CONNECTICUT RETAIL INSTALLMENT SALES FINANCE ACT

44. Paragraphs 1-33 are incorporated.

45. Atlantic Motors violated RISFA, Conn. Gen. Stat. § 36a-770 *et seq.* by not securing Plaintiff's signature on the Contract and by not providing him with a copy.

46. Atlantic Motors' violations of RISFA were willful within the meaning of Conn. Gen. Stat. § 36a-786.

47. CAC, after it had knowledge of the violations of RISFA, has retained the benefits, proceeds, profits, or advantages from the violation or otherwise has ratified the violation.

48. Claimant is entitled to an order that CAC and Atlantic Motors are barred from recovering any finance, delinquency, or collection charge on the Contract pursuant to Conn. Gen. Stat. § 36a-786.

### D. CONNECTICUT UNFAIR TRADE PRACTICES ACT

49. Paragraphs 1-48 are incorporated.

50. Atlantic Motors' actions as alleged above also violated CUTPA.

51. Atlantic Motors' refusal and failure to sell the Vehicle for the agreed upon price is a per se violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1).

52. Atlantic Motors acted unfairly and deceptively in violation of CUTPA.

53. As a result of Atlantic Motors' conduct, Plaintiff suffered an ascertainable loss, including but not limited to he overpaid for the Vehicle, he lost the $400 cash payment that was not credited to the purchase, and he was credited $1,000 less than agreed upon for his down payment.

54. Plaintiff is entitled to actual damages of the amounts paid under the contract, punitive damages, and attorney's fees.

Wherefore, Plaintiff claims actual damages, double damages, TILA statutory damages of $2,000, punitive damages, attorney's fees and costs, and an order that there is no finance charge collectible under the contract.  Plaintiff also seeks an order permitting him to make the back payments under the Contract without interest.

                PLAINTIFF, MICHAEL A. CRISCIONE

        By: /s/ *Daniel S. Blinn*
            Daniel S. Blinn (ct02188)
            Consumer Law Group, LLC
            35 Cold Spring Rd. Suite 512
            Rocky Hill, CT  06067
            Tel. (860) 571-0408
            Fax. (860) 571-7457
            dblinn@consumerlawgroup.com